The court took time to deliberate, and afterwards' Chancellor Rutledge delivered the decree of the court.
Complainant’s bill states, that his testatrix had one daughter by a former marriage, and being possessed of a considerable personal estate in 1783, she married defendant’s testator, Wm; Smelie. That -not having made a settlement on her daughter, when she married Mr. Sme-lie, he on the 6th of Aug. 1787, executed a deed, giving' to her after his decease, all the estate that belonged to her at the time of marriage. That soon afterwards, viz. in 1786 or 87, she made a will, disposing of the principal property she was possessed of at the time of her marriage, some part thereof to her daughter; a negro and 100/. to S. Hutchinson, and the remainder to 'her husband during life, and after his death to her 'daughter ; and she appointed her husband and .complainant executors. That the complainant, with the assent and privity of Mr. Smelie, proved the will, and qualified as executor. That defen- *75 /iant’s testator delivered up the personal property to complainant, to be subject to the dispositions in the will of .his wife. That it was appraised with his consent; the legacies were afterwards delivered over to the legatees, and the remainder was delivered to the said Wm. Smelie for his life, agreeable to the directions of the will. That Wm. Smelie is dead, and complainant has applied to his executors for the personal property, (so as aforesaid bequeathed to him for life) which they refused to deliver.
The defendants admit that complainant’s testatrix was possessed of some personal estate at the time of her marriage with the testator; the whole consideration money, for which had not been paid, and which he afterwards satisfied. He admits the deed, but denies the validity of it, there being no trustee named in it: also denies complainant’s right to take personal property, as it was not to be effected till after testator’s death. Admits that Mrs. Sme-lie made a will, but denies the validity of it, as it was not made under the authority of any settlement or deed ; or ivith the ass.ent'of Smelie, without which, she had no right to make any will that would be binding. Defendants contend that Smelie’s assent to the delivery of the negroes to the other legatees ought not to be binding, as he was either ignorant of, or misconceived his rights.
The evidence producedin this case was, the will of Mrs. Smelie, which was admitted : also, that it. was written by her husband Mr. Smelie. It was proved that after it was executed, he kept it in his possession, and sometime after her death, went with the complainant, and delivered it to the ordinary. That the complainant received the personal property as executor from Mr. Smelie, and re-delivered part of it to him as a legatee under the will. That the legacies were delivered to the respective legatees by complainant, and Mr. Smelie himself paid the 1001. legacy to Mrs. Hutchinspn. J. Smelie, another witness, deposed that Wm. Sritelie, the husband, appointed him one of the appraisers of the personal property, which he called his wife’s estate. .That it was pointed out by Smelie, who *76 said it was to be appraised as her’s, and not his. Mrs» B-u was present when he drew the will, and desired w^e í0 S've ProPerty to ^ler daughter, and that he wanted nothing. Mr. Smelie made his own will in Janua-ry> 1798, and a codicil in December, 1800; in neither of which has he disposed of this property.
For the defendant, it was contended that agreeably to the settled principles of lav/, the husband and wife are considered as one person : that she has no will of her own : that he by marrying, acquired the absolute right to her, personal property, and she cannot dispose thereof, unless a power to do it is reserved to her by articles, or a settlement before marriage; which, however, was not done in this case. That the deed was void, being made after marriage, without the intervention of trustees. That to make a will valid, she must have permission in writing; and that subsequent acts of confirmation by the husband, do not strengthen it or make it'good. That if the will should be deemed good, defendants should be at liberty to hold the personal property for the money paid, for her debts, and for this property particularly. It was insisted for complainant, that gifts between husband and wife, after marriage, would be supported in this court, though not at law, without the intervention of trustees; so as they do not afi, feet or prejudice the rights of creditors. That if a husband consents to his wife’s making a will, he should not afterwards dissent, and-thatan assent in writing is not necessary.
This is a very singular case, it cannot be assimilated to any in the books, and 'probably such another may never occur ; it’must therefore be determined on its own .particular circumstances.
It is not pretended that the power of disposing of her property was reserved by articles or settlement before marriage. . On the contrary it is admitted, that she married without any settlement.
This then comes under the idea of a voluntary settlement, or rather a voluntary permission of the husband a£- *77 ter marriage, for the wife to dispose of the property she brought in marriage. Creditors cannot be affected by it, as the husband left property to pay his debts. On this ground it must stand or fall. If creditors will not be fected, call this pap-;r a will, or a deed cfappointment, any other name you please, if he has given such assent to the disposition as would satisfy the mind of the court, that he was consenting thereto, it ought to be binding and conclusive.
As to the deed of August, 1787, that is out of the question ; she clearly had no right to make any disposition, unless she survived him.
The case then rests altogether on the instrument of writing made in Oct. 1787, (which has been called the will of the wife,) and the simple question is whether there was such an assent by him to her making that disposition of the property as would bind him, and consequently all others claiming under him. That it is not absolutely necessary the assent should be in writing is plain, from the case of Lucas and Lucas, 1 Atk. 270, where a verbal promise made by the husband to the wife in her lifetime, ■and delivery of property after her death, was held sufficient to vest the property in the daughter, and he could not after-wards invalidate it. And in another case ofBrooks & Tanner, among other points, it was determined, that if the husband consent that bis wife should make a will, and she does so, and dies, if after her-death he comes to the executor and seems to approve her choice of him as an executor, and seems satisfied in the main with the will, this is a good assent, and makes it a good will; though wrhen he sees and reads the will, he is therewith displeased, and opposes the probate of it: and his subsequent disagreement after the formed assent shall not hurt the will.
Compare the case before the court with those above cited, and we shall see that it is much stronger than either of them. Defendant’s testator, several years after his marriage, when he is fully acquainted with all the circumstances relative to the property he received with his wife. *78 and after he had made himself responsible for payment of part of the purchase money, undertook to draw, and actu-^7 ‘^rew a will for his wife, disposing of the property he got with her in marriage ; nominates himself an executor therein, and directs it on the back to' himself, and the 0thc]r executors; gets it executed by her; keeps it in his own possession, and some time after her death, carries and delivers it to the ordinary to be proved.: The other executor qualifying at the same time, he being present,- and assenting thereto.
Shortly after he deli veres the property to the other executor ; he himself nominates an appraiser, and not only permits the executor to deliver the legacies to the respective legatees, and himself pays a pecuniary legacy to one of them, but receives back such part of the property as his wife had bequeathed to him for lifer When he drew the will, he relinquished his claim to every part of the property, saying he did not want it, arid desired his wife to give the whole of it to her daughter. And finally, 12 or 13 years after her death he makes his will, and a codicil, in neither of which does he dispose of any of the property that he received with his wife.
. If an assent in writing- was absolutely necessary, we are of opinion that the very act of drawing the will, having it executed, keeping it in his possession and himself delivering it after her death to the ordinary tobe proved, ought to be deemed as a full'assent to the will, and to the dispositions of the property therein mentioned, and binding on him and those claiming under him. That the subsequent conduct of defendant’s testator in giving up the property to the other executor, to be delivered over agreeably to the will, he himself paying the pecuniary legacy, receiving back some of the property given him for life, and not disposing of any part of it by his will or codicil, are all confirming acts of his assent to the disposition made in the will, which neither he nor those claiming under him ought at this late day to be allowed to invalidate. ■ That his executors should not be permitted to set 'up the demand *79 they have done for the .money paid by him on account of this property, because he was full}'- apprised of the sitúation of it, had made himself personally responsible for it several years before the deed of 1787, or the subsequent disposition of it by his wife, and never brought it forward as a claim against complainant or his testatrix. It therefore ordered and decreed that the defendants do forthwith deliver up to the complainant such oi the property as hath come into their hands or possession, which their testator received from complainant, under .the will of his wife, and also account for the work and labour of the negroes, since the death of their testator.
Costs to be paid by defendants.